## THE STATE OF CONNECTICUT *against* JOSIAH BROOKS.

*A barn, not connected with the mansion-house, but standing alone, several rods distant therefrom, is an " out-house," within the 24th section of the act concerning crimes and punishments.*

*Oats, rye and corn, the produce of the owner's farm, lying in a barn, used by him, for the keeping of his hay, grain and cattle are goods, wares and merchandize, deposited therein, within the same section.*

This was an information against the prisoner, for breaking and entering, in the night season, a store, warehouse, or out-house, the property of *Eleazar Hale,* wherein goods, wares and merchandize were deposited, with an intention to commit theft within the same.

On the trial, at *Hartford, February* term, 1823, before *Bristol,* J., it appeared, that the building mentioned in the information, was a barn, used, by the owner, for the keeping of his hay, grain, cattle, &c. and was in no way connected with the mansion house, or any other building, but was several rods distant therefrom. In one part of this barn, there were bins or apartments, in which oats, rye and corn were kept, at the time when the offence was alleged to have been committed. It was generally used as a depository of the hay, grain, &c. which the owner raised or produced from his farm ; and the articles then in the barn were so raised or produced. A part of these articles he occasionally sold, when he had more than was necessary for his own consumption ; but he did not otherwise buy or sell grain, or merchandize therewith. Upon these facts, the counsel for the prisoner insisted, that this barn was not a store, warehouse or out-house, in which goods, wares or merchandize were deposited, within the meaning of the statute, and prayed the judge so to instruct the jury. But the judge instructed the jury, that said barn was an out-house, within the meaning of the statute ; and the jury thereupon returned a verdict of *guilty* against the prisoner. He then moved for a new trial, on the ground of a misdirection.

*Daggett* and *Johnson*, in support of the motion, contended, 1. That this barn, not being within the curtilage, nor any way connected with the mansion house, or any other building, but several rods distant therefrom, was not an out-house within the meaning of the statute.

2. That this was not a building, in which goods, wares and merchandize were deposited.

*Tousey,* contra, insisted, 1. That a barn, not contiguous to the mansion-house, is an out-house. First, this is its import in common parlance. It stands at the head of the class of buildings denominated out-houses. Secondly, it is so considered at common law. 2 *East's P. C.* 492. Thirdly, it was so considered by the legislature, at the time of passing the statute on which the prosecution is founded ; as will appear, by reference to other parts of the same statute. See, particularly, sect. 27.

2. That the expression, " goods, wares and merchandize," means *personal chattels ;* and property of this description was, unquestionably, deposited in the building in question.

Hosmer, Ch. J. In the 24th section of the " act concerning crimes and punishments," (*p.* 154.) it is enacted, that " every person who shall, in the night season, break and enter the store, shop, ware-house or out-house of another, whether parcel of any mansion-house or not, wherein goods, wares or merchandize are deposited, with an intention to commit theft within the same, and shall be thereof duly convicted, shall suffer imprisonment in new-gate prison, for a term not exceeding three years."

A statute ought to be construed according to the true intention of the makers. *Heydon's* case, 3 *Co. Rep.* 7. *The Soldier's* case, *Cro. Car.* 71. And this intention, in penal laws, is attained, by a strict construction. *Daggett* v. *State,* ante 60. At the same time, it must be admitted, that the words and meaning of one part of a statute, lead to the sense of another part, whether enquiry be had in regard to the signification of a word or phrase, or to the intendment of the law. Hence, it has become an established principle, that the most natural and genuine way of construing an act of the legislature, is, to construe one part, by another part, of the same statute. *Co. Litt.* 381. *a. Stowel* v. Lord *Zouch,* Plowd. 365. *Arthur* v. *Bokenham,* 11 *Mod.* 161.

HARVARD LAW LIBRARY

*Hartford,*
*June,*
*1823.*

State
*v.*
Brooks.

An *out-house* is a building without the mansion-house, intended for the accommodation of the owner or occupant. It is the subserviency of it to the mansion-house, that gives it the denomination of an out-house, and not the fact, that it is included within the same fence, or within what is denominated *the curtilage* or *homestead.* If it be without the enclosure surrounding the mansion-house, it is equally an out-house, and as much so, as if it were covered by the same roof. Whether it be within the curtilage, and, in legal contemplation, parcel of the mansion, is a question entirely distinct from the enquiry, whether it be an out-house ; and is without any relation to it.

Thus far, I have considered the popular meaning of the word ; but its legal intendment is precisely the same. The statute, which is now the subject of construction, speaks of " the out-house of another, whether parcel of any mansion-house or not," and contains a clear explication of the sense in which the word in question is used. The 27th section of the law on which I am commenting, has the expression, " any barn, stable, or *other out-house*, not parcel of any dwelling-house," and decisively shews, that in legislative contemplation, a barn may be an out-house, although it be not parcel of the mansion, or within the curtilage. In 1 *Hale's P. C.* 558, 9. it is said, *domus mansionalis* doth not only include the dwelling-house, but also the *out-houses*, that are parcel thereof, as barn, stable, cow-houses, dairy-houses, &c. But if the barn, &c. be no parcel of the messuage, or if it be far remote from the dwelling-house, and not so near as to be reasonably esteemed parcel thereof, then the breaking of it is not burglary, for it is not *domus mansionalis*, nor any part thereof." To the same effect is the doctrine in *Hawkins*, (*P. C. vol.* 1. ch. 38. *s.* 12.) which it is unnecessary to repeat. In 2 *East's P. C.* 492, 3. an idea of similar import is fully and definitely expressed. " The mansion not only includes the dwelling-house, but also the *out-houses*, such as *barns*, stables, cow-houses, dairy-houses and the like, if they be parcel of the messuage, though they be not under the same roof, or joining contiguous to it." " But no distant *barn*, ware-house, or the like, is under the same privilege ; nor indeed any *out-house*, however near, if it be not parcel of the messuage, and so found to be." *Vid.* 4 *Bla. Comm.* 221. 225.

From the preceding discussion, it appears, that a barn is an out-house, and not the less so, because it is so remote from

Hartford,
June,
1823.

State
v.
Brooks.

the mansion-house, as not to be deemed parcel of it. Its contiguity or remoteness enters not into the idea whether it is an out-house, but merely into the question whether it is parcel of the mansion. It is the circumstance of mid-night terror in breaking open a dwelling-house, which constitutes the crime of burglary ; and for the same reason, the barn and other out-houses, if in proximity to the mansion-house, are deemed *quasi* dwelling-houses, and entitled to the same protection. If distant, they are not considered as parcel of the mansion ; but their nature and relation to the principal dwelling, as *out-houses*, are not changed or affected.

The legislature might have enumerated the buildings, the breaking of which they thought proper to constitute burglary ; but by the use of the generic term *out-houses*, their intention is as clearly manifest, as if a specification of every building comprised within the above term had been made.

By the expression, " goods, wares and merchandize," is intended any personal property, of which larceny may be committed ; and not those goods and chattels only, which are offered for sale. Such has been the invariable construction.

In the case before us, it appears, that the barn, for the breaking of which in the night season, the information was brought, was used, by the owner, for the keeping of his hay and grain, and had bins or apartments, in which oats, rye and corn, the produce of his farm, were kept, at the time of the alleged burglary ; and that it was in no manner connected with his mansion-house, or any other building, but was several rods distant therefrom. On these facts, it is, in my judgment, indisputable, that the barn in question was an out-house, not parcel of the mansion-house, wherein goods, wares and merchandize were deposited ; and the breaking into it, in the night season, with an intention to commit theft, was burglary within the words and manifest intent of the law.

PETERS and BRISTOL, Js. were of the same opinion.

CHAPMAN and BRAINARD, Js. thought that the barn, in this case, was not an out-house within the meaning of that section of the statute, on which the information was founded. With respect to the other point, they concurred in the opinion of the Chief Justice.

New trial not to be granted.